SKAPIK LAW GROUP
Mark J. Skapik (SBN 164957)
Geralyn L. Skapik (SBN 145055)
Blair J. Berkley (SBN 222293)
Matthew T. Falkenstein (SBN 333302)
5861 Pine Avenue, Suite A-1
Chino Hills, California 91709
Telephone:  (909) 398-4404
Facsimile:   (909) 398-1883
Email: mskapik@skapiklaw.com, gskapik@skapiklaw.com,
bberkley@skapiklaw.com, mfalkenstein@skapiklaw.com

Attorneys for JONATHAN LAMAR JACKSON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JONATHAN LAMAR JACKSON, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO, a legal subdivision of the State of California; Deputy JAMIE LEATHERMAN, an individual; Deputy BRANDON NARCISSE, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. 42 U.S.C. § 1983 (No reasonable suspicion)<br>2. 42 U.S.C. § 1983 (Excessive force)<br>3. 42 U.S.C. § 1983 (Monell) |

///

///

Plaintiff JONATHAN LAMAR JACKSON ("Plaintiff") alleges as follows:

## PARTIES

1. Plaintiff is an individual and resident of Twentynine Palms, County of San Bernardino.

2. Defendant COUNTY OF SAN BERNARDINO ("COUNTY") is a political subdivision of the State of California.

3. Defendant Deputy Jamie Leatherman ("LEATHERMAN") is an individual who, Plaintiff is informed and believes and thereon alleges, is a resident of San Bernardino County. LEATHERMAN is a Deputy in the COUNTY Sheriff's Department and a COUNTY employee.

4. Defendant Deputy Brandon Narcisse ("NARCISSE") is an individual who, Plaintiff is informed and believes and thereon alleges, is a resident of San Bernardino County. NARCISSE is a Deputy in the COUNTY Sheriff's Department and a COUNTY employee.

5. Defendants LEATHERMAN and NARCISSE are sued in their individual capacities.

6. Defendant DOES 1 through 10 are COUNTY employees working as Deputies in the COUNTY Sheriff's Department. The true names of Defendants DOES 1 through 10 are unknown to Plaintiff who, therefore, sues these Defendants by such fictitious names. When the true names of these Defendants are ascertained, Plaintiff will amend this Complaint to allege their true names. COUNTY, LEATHERMAN, NARCISSE, and DOES 1 through 10 are referred to collectively as "Defendants."

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over Plaintiff's 42 U.S.C. section 1983 claims pursuant to 28 U.S.C. sections 1331 and 1343.

///

///

# GENERAL ALLEGATIONS

8. Plaintiff is 5 feet, 11 inches, and weighs approximately 258 pounds.

9. On Wednesday March 16, 2022, Plaintiff was homeless in Twentynine Palms, California. On that date, Plaintiff lived in his automobile. He spent the entire day sitting in his car because he had the day off work and had nowhere else to sit.

10. At approximately 10:00 p.m., Plaintiff was parked in front of the Cold Stone Creamery located at 6485 Adobe Road, Twentynine Palms. Plaintiff was standing next to his car and stretching (as a consequence of having been sitting in his car all day). He had not consumed alcohol or drugs all day.

11. A white woman, thinking that Plaintiff was someone she knew, drove right up to Plaintiff. She told Plaintiff that he looked like someone she knew.

12. The woman asked Plaintiff if he wanted a pizza. She explained that the Little Caesars Pizza across the street closed early and she was given several Hot-N-Ready pizzas. Plaintiff accepted a pizza.

13. Plaintiff noticed the woman had five or six pizza boxes on her passenger-front seat.

14. The woman left and Plaintiff proceeded to eat the pizza outside his car.

15. At approximately 10:08 p.m., Defendant LEATHERMAN pulled up in her patrol vehicle. Plaintiff had the pizza box in one hand and a slice of pizza in the other.

16. LEATHERMAN told Plaintiff her name was Deputy Leatherman and asked who he was. Plaintiff responded that he was "Jay."

17. LEATHERMAN represented that she was responding to a call reporting that someone was taking photographs.

18. Plaintiff asked, "With a camera?" (Plaintiff's telephone was in his car and was charging. He had taken no photographs.)

19. LEATHERMAN asked Plaintiff if he had a weapon. Plaintiff responded, "No."

20. LEATHERMAN asked Plaintiff if he had identification. Plaintiff responded, "Yes, in my left pants pocket." She asked if she could see the identification. Plaintiff responded, "Yes."

21. Plaintiff was wearing a hoodie that had a hands-warming pocket across the stomach area. There was nothing in the pocket. There were no bulges in Plaintiff's clothing.

22. Plaintiff's identification was in a small wallet in his left pants pocket.

23. When Plaintiff moved to remove the wallet, LEATHERMAN told him to keep his hand out of his pocket.

24. LEATHERMAN ordered Plaintiff to go to the back of his car. Plaintiff had the pizza box in his left hand and a slice of pizza in his right hand.

25. LEATHERMAN ordered Plaintiff to put the pizza down and turn to face the car.

26. Plaintiff asked if she was arresting him. LEATHERMAN responded, "No. I am just searching you."

27. Plaintiff turned to face his car and put the pizza box on the trunk of his car.

28. LEATHERMAN grabbed the slice of pizza from Plaintiff's right hand and ordered him to put both hands behind his back. Plaintiff put his left hand behind his back.

29. LEATHERMAN grabbed Plaintiff's right wrist and tried to twist his arm to get his right hand behind his back. She also bent Plaintiff's right thumb. She explained that this is how she does searches.

30. LEATHERMAN was unable to lock her handcuffs on Plaintiff's wrists.

31. With both of his hands behind his back, Plaintiff asked LEATHERMAN what she was doing.

32. LEATHERMAN ordered Plaintiff to get on the ground so that she could search him.

33. LEATHERMAN tried to trip Plaintiff. Plaintiff tripped and put his hands out in front (in case he fell), but ultimately did not fall.

34. When he regained his balance, Plaintiff extended arms (palms up) over his car to show that he was not resisting.

35. LEATHERMAN threatened that if Plaintiff did not go to the ground, she would pepper spray him. Plaintiff pleaded for LEATHERMAN not to spray him.

36. Nevertheless, LEATHERMAN sprayed Plaintiff in the face. Plaintiff was temporarily blinded. LEATHERMAN began to strike Plaintiff.

37. Defendant NARCISSE arrived and tackled Plaintiff. LEATHERMAN or NARCISSE put a choke hold on Plaintiff and tried to choke him while he was on the ground. Plaintiff was unable to breathe.

38. NARCISSE repeatedly punched Plaintiff in the face. Plaintiff thought he was going to die.

39. Plaintiff rolled over to his knees and was able to stand up with NARCISSE on his back.

40. Defendants pushed Plaintiff up against the store-front window of Cold Stone Creamery and continued to punch him.

41. A passerby told Defendants that they did not have to punch Plaintiff and that he was recording the assault.

42. Plaintiff pleaded, "Just arrest me. You do not have to punch."

43. Defendants loosened their choke hold and Plaintiff was able to put his hands behind his back. Defendants finally locked on some handcuffs.

44. Plaintiff requested medical attention because he could not breathe.

45. A Morongo Basin ambulance and paramedics arrived, but provided no treatment.

***Incarceration***

46. Defendants transported Plaintiff to the Morongo Basin Jail at 63665 29 Palms Highway, Joshua Tree, California 92252.

47. The next morning, Plaintiff was transferred to the West Valley Detention Center ("WVDC") in Rancho Cucamonga. At WVDC, Plaintiff was quarantined for three weeks pursuant to a COVID-19 protocol.

48. On March 21, 2022, a criminal complaint for violation of *Penal Code* section 69 (resisting executive officer) was filed against Plaintiff.

49. On or about March 21, 2022, Plaintiff was arraigned.

50. After a three-week COVID-19 quarantine at WVDC, Plaintiff was transferred to the Glen Helen Rehabilitation Center ("GHRC").

51. Plaintiff's preliminary hearing scheduled for March 30, 2022, was continued to June 30, 2022. The court granted Plaintiff's request to be released on his own recognizance.

52. On June 30, 2022, the preliminary hearing was continued to August 11, 2022.

53. On August 11, 2022, the preliminary hearing was again continued to August 18, 2022.

**The Preliminary Hearing**

54. On August 18, 2022, LEATHERMAN was the sole witness for the prosecution at the preliminary hearing.

55. LEATHERMAN falsely testified that on March 16, 2022, at approximately 10:00 p.m., she was responding to a call for service when she contacted Plaintiff. She falsely testified that Plaintiff was talking to himself, appeared to be under the influence, and was slurring his words.

56. LEATHERMAN falsely testified that she saw a bulge near Plaintiff's front waist.

57. She falsely testified that Plaintiff stood up straight, pulled his shoulders back, puffed out his chest, and took a fighting position.

58. She falsely testified that Plaintiff demonstrated aggressive body language.

59. She falsely testified that Plaintiff raised his hand as if he was going to strike her.

60. She falsely testified that Plaintiff said "No" when she asked him to put his hands behind his back.

61. She falsely testified that she forced Plaintiff to the ground and delivered a knee strike to Plaintiff's groin.

62. She falsely testified that Plaintiff continued to fight with her and Deputy NARCISSE after NARCISSE tackled him.

63. She falsely testified that Plaintiff continued to resist arrest after NARCISSE punched him in the face three times.

64. In addition to LEATHERMAN's false testimony, the District Attorney falsely represented that Plaintiff had prior convictions for assaulting a police officer and driving under the influence.

65. On the basis of LEATHERMAN's false testimony, Judge Christopher S. Pallone held Plaintiff to answer.

**Criminal Trial**

66. The case was called for trial on November 11, 2022, the Honorable Kory Mathewson presiding.

67. Plaintiff is informed and believes and thereon alleges that the district attorney viewed the Cold-Stone-Creamery security-video recording and moved for dismissal.

68. Judge Mathewson took a brief recess. Plaintiff is informed and believes and thereon alleges that Judge Mathewson viewed the Cold-Stone-Creamery video recording. He returned to the bench and dismissed the case.

///

///

# I.

## FIRST CAUSE OF ACTION

## VIOLATION OF FOURTH AMENDMENT—ARREST WITHOUT REASONABLE SUSPICION

**[42 U.S.C. § 1983]**

(By Plaintiff Against LEATHERMAN and NARCISSE)

69. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 68 as though fully set forth herein.

70. On March 16, 2022, at approximately 10:08 p.m., Defendant LEATHERMAN contacted Plaintiff in front of the Cold Stone Creamery located at 6485 Adobe Road, Twentynine Palms, California. Plaintiff had a pizza box in one hand and a slice of pizza in the other.

71. LEATHERMAN had no reasonable grounds to believe that Plaintiff committed a crime or intended to commit a crime. Nevertheless, LEATHERMAN demanded that Plaintiff submit to a pat-down search and get on the ground to facilitate her search.

72. When Plaintiff did not immediately drop to the ground, LEATHERMAN attempted to trip Plaintiff. Then she pepper sprayed him.

73. Defendant NARCISSE arrived and tackled Plaintiff.

74. LEATHERMAN or NARCISSE put a choke hold on Plaintiff and tried to choke him while he was on the ground. NARCISSE repeatedly punched Plaintiff in the face. Plaintiff could not breathe and thought he was going to die. Plaintiff rolled over to his knees and was able to stand up with NARCISSE on his back.

75. LEATHERMAN and NARCISSE pushed Plaintiff up against the storefront window of Cold Stone Creamery and continued to punch him.

76. Defendants loosened their choke hold and Plaintiff was able to put his hands behind his back. Defendants finally locked on some handcuffs.

- 8 -
COMPLAINT

77. In so arresting Plaintiff, LEATHERMAN and NARCISSE acted under color of law.

78. In so arresting Plaintiff, LEATHERMAN and NARCISSE acted intentionally, maliciously, and oppressively.

79. Defendants' arrest of Plaintiff was unreasonable, without probable cause, and deprived Plaintiff of his Fourth Amendment right to be free from unreasonable seizures.

80. The acts of LEATHERMAN and NARCISSE were the proximate cause and moving force in the deprivation of Plaintiff's Fourth Amendment right to be free from unreasonable seizures.

## II.
## SECOND CAUSE OF ACTION
## VIOLATION OF FOURTH AMENDMENT—EXCESSIVE FORCE
### [42 U.S.C. § 1983]
(By Plaintiff Against LEATHERMAN and NARCISSE)

81. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 68 as though fully set forth herein.

82. At approximately 10:08 p.m., Defendant LEATHERMAN contacted Plaintiff in front of the Cold Stone Creamery located at 6485 Adobe Road, Twentynine Palms, California. Plaintiff had a pizza box in one hand and a slice of pizza in the other.

83. LEATHERMAN told Plaintiff her name was Deputy Leatherman and asked who he was. Plaintiff responded that he was "Jay."

84. LEATHERMAN represented that she was responding to a call reporting that someone was taking photographs.

85. Plaintiff asked, "With a camera?" (Plaintiff's telephone was in his car and was charging. He had taken no photographs.)

86. LEATHERMAN asked Plaintiff if he had a weapon. Plaintiff responded, "No."
- 9 -
COMPLAINT

87. LEATHERMAN asked Plaintiff if he had identification. Plaintiff responded, "Yes, in my left pants pocket." She asked if she could see the identification. Plaintiff responded, "Yes."

88. Plaintiff was wearing a hoodie that had a hands-warming pocket across the stomach area. There was nothing in the pocket. There were no bulges in Plaintiff's clothing.

89. Plaintiff's identification was in a small wallet in his left pants pocket.

90. When Plaintiff moved to remove the wallet, LEATHERMAN told him to keep his hand out of his pocket.

91. LEATHERMAN ordered Plaintiff to go to the back of his car. Plaintiff had the pizza box in his left hand and a slice of pizza in his right hand.

92. LEATHERMAN ordered Plaintiff to put the pizza down and turn to face the car.

93. Plaintiff asked if she was arresting him. LEATHERMAN responded, "No. I am just searching you."

94. Plaintiff turned to face his car and put the pizza box on the truck of his car.

95. LEATHERMAN grabbed the slice of pizza from Plaintiff's right hand and ordered him to put both hands behind his back. Plaintiff put his left hand behind his back.

96. LEATHERMAN grabbed Plaintiff's right wrist and tried to twist his arm to get his right hand behind his back. She also bent Plaintiff's right thumb. She explained that this is how she does searches.

97. LEATHERMAN was unable to lock her handcuffs on Plaintiff's wrists.

98. With both of his hands behind his back, Plaintiff asked LEATHERMAN what she was doing.

99. LEATHERMAN ordered Plaintiff to get on the ground so that she could search him.

100. LEATHERMAN tried to trip Plaintiff. Plaintiff tripped and put his hands out in front (in case he fell), but ultimately did not fall.

101. When he regained his balance, Plaintiff extended arms (palms up) over his car to show that he was not resisting.

102. LEATHERMAN threatened that if Plaintiff did not go to the ground, she would pepper spray him. Plaintiff pleaded for LEATHERMAN not to spray him.

103. Nevertheless, LEATHERMAN sprayed Plaintiff in the face. Plaintiff was temporarily blinded. LEATHERMAN began to strike Plaintiff.

104. Defendant NARCISSE arrived and tackled Plaintiff. LEATHERMAN or NARCISSE put a choke hold on Plaintiff and tried to choke him while he was on the ground. Plaintiff was unable to breathe.

105. NARCISSE repeatedly punched Plaintiff in the face. Plaintiff thought he was going to die.

106. Plaintiff rolled over to his knees and was able to stand up with NARCISSE on his back.

107. Defendants pushed Plaintiff up against the store-front window of Cold Stone Creamery and continued to punch him.

108. A passerby told Defendants that they did not have to punch Plaintiff and that he was recording the assault.

109. Plaintiff pleaded, "Just arrest me. You do not have to punch."

110. Defendants loosened their choke hold and Plaintiff was able to put his hands behind his back. Defendants finally locked on some handcuffs.

111. Defendants had no reasonable suspicion to believe that Plaintiff had committed a crime or intended to commit a crime.

112. In beating Plaintiff in front of the Cold Stone Creamery, Defendants LEATHERMAN and NARCISSE acted under color of law.

113. In beating Plaintiff, LEATHERMAN and NARCISSE acted intentionally, maliciously, and oppressively to cause Plaintiff pain, suffering, and emotional distress.

114. LEATHERMAN and NARCISSE were motivated by evil motive.

115. Defendants' seizure of Plaintiff's person was unreasonable and deprived Plaintiff of his Fourth Amendment right to be free of unreasonable seizures.

116. The acts of LEATHERMAN and NARCISSE were the proximate cause and moving force in the deprivation of Plaintiff's Fourth Amendment rights.

## III.

## THIRD CAUSE OF ACTION

## <u>MONELL</u>

## [42 U.S.C. § 1983]

(By Plaintiff Against COUNTY)

117. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 116 as though fully set forth herein.

118. At approximately 10:08 p.m., Defendant LEATHERMAN contacted Plaintiff in front of the Cold Stone Creamery located at 6485 Adobe Road, Twentynine Palms, California. Plaintiff had a pizza box in one hand and a slice of pizza in the other.

119. LEATHERMAN told Plaintiff her name was Deputy Leatherman and asked who he was. Plaintiff responded that he was "Jay."

120. LEATHERMAN represented that she was responding to a call reporting that someone was taking photographs.

121. Plaintiff asked, "With a camera?" (Plaintiff's telephone was in his car and was charging. Plaintiff had taken no photographs.)

122. LEATHERMAN asked Plaintiff if he had a weapon. Plaintiff responded, "No."

123. LEATHERMAN asked Plaintiff if he had identification. Plaintiff responded, "Yes, in my left pants pocket." She asked if she could see the identification. Plaintiff responded, "Yes."

124. Plaintiff was wearing a hoodie that had a hands-warming pocket across the stomach area. There was nothing in the pocket. There were no bulges in Plaintiff's clothing.

125. Plaintiff's identification was in a small wallet in his left pants pocket.

126. When Plaintiff moved to remove the wallet, LEATHERMAN told him to keep his hand out of his pocket.

127. LEATHERMAN ordered Plaintiff to go to the back of his car. Plaintiff had the pizza box in his left hand and a slice of pizza in his right hand.

128. LEATHERMAN ordered Plaintiff to put the pizza down and turn to face the car.

129. Plaintiff asked if she was arresting him. LEATHERMAN responded, "No. I am just searching you."

130. Plaintiff turned to face his car and put the pizza box on the trunk of the car.

131. LEATHERMAN grabbed the slice of pizza from Plaintiff's right hand and ordered him to put both hands behind his back. Plaintiff put his left hand behind his back.

132. LEATHERMAN grabbed Plaintiff's right wrist and tried to twist his arm to get his right hand behind his back. She also bent Plaintiff's right thumb. She explained that this is how she does searches.

133. LEATHERMAN was unable to lock her handcuffs on Plaintiff's wrists.

134. With both of his hands behind his back, Plaintiff asked LEATHERMAN what she was doing.

135. LEATHERMAN ordered Plaintiff to get on the ground so that she could search him.

136. LEATHERMAN tried to trip Plaintiff. Plaintiff tripped and put his hands out in front (in case he fell), but ultimately did not fall.

137. When he regained his balance, Plaintiff extended arms (palms up) over his car to show that he was not resisting.

138. LEATHERMAN threatened that if Plaintiff did not go to the ground, she would pepper spray him. Plaintiff pleaded for LEATHERMAN not to spray him.

139. Nevertheless, LEATHERMAN sprayed Plaintiff in the face. Plaintiff was temporarily blinded. LEATHERMAN began to strike Plaintiff.

140. Defendant NARCISSE arrived and tackled Plaintiff. LEATHERMAN or NARCISSE put a choke hold on Plaintiff and tried to choke him while he was on the ground. Plaintiff was unable to breathe.

141. NARCISSE repeatedly punched Plaintiff in the face. Plaintiff thought he was going to die.

142. Plaintiff rolled over to his knees and was able to stand up with NARCISSE on his back.

143. Defendants pushed Plaintiff up against the store-front window of Cold Stone Creamery and continued to punch him.

144. A passerby told Defendants that they did not have to punch Plaintiff and that he was recording the assault.

145. Plaintiff pleaded, "Just arrest me. You do not have to punch."

146. Defendants loosened their choke hold and Plaintiff was able to put his hands behind his back. Defendants finally locked on some handcuffs.

147. Defendants had no reasonable suspicion to believe that Plaintiff had committed a crime or intended to commit a crime.

148. Defendants' arrest of Plaintiff was unreasonable, without probable cause, and deprived Plaintiff of his Fourth Amendment right to be free from unreasonable seizures.

149. In beating Plaintiff in front of the Cold Stone Creamery, Defendants LEATHERMAN and NARCISSE acted under color of law.

150. Defendants' seizure of Plaintiff's person was unreasonable and deprived Plaintiff of his Fourth Amendment right to be free of unreasonable seizures.

151. In beating Plaintiff and depriving Plaintiff of his right to be free from unreasonable seizures, LEATHERMAN and NARCISSE acted pursuant to the longstanding practice or custom of the San Bernardino County Sheriff's Department ("SBSD") to condone violence and excessive force.

152. Plaintiff is informed and believes and thereon alleges that the unjustified beating of Plaintiff was found to be consistent with SBSD policy, practice, and custom.

153. Plaintiff is informed and believes and thereon alleges that Defendants LEATHERMAN and NARCISSE were not disciplined for their unjustified beating of Plaintiff.

154. Plaintiff is informed and believes and thereon alleges that SBSD employs and retains deputies who it knows have dangerous propensities for abusing their authorities and mistreating citizens.

155. Plaintiff is informed and believes and thereon alleges that SBSD maintains grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling deputies' use of excessive force.

156. Plaintiff is informed and believes and thereon alleges that SBSD policy is to not investigate claims of excessive force.

157. Plaintiff is informed and believes and thereon alleges that SBSD policy is to not discipline deputies accused of using excessive force.

158. The COUNTY's longstanding practice or custom of condoning violence and excessive force was the proximate cause and moving force in the deprivation of Plaintiff's Fourth Amendment right to be free from unreasonable seizures.

**ON THE FIRST CAUSE OF ACTION [42 U.S.C. § 1983 (No reasonable suspicion)**

1. For general and special damages;
2. For compensatory damages for lost earnings, loss of future earnings, and loss of earning capacity;
3. For exemplary and punitive damages;
4. For attorney fees pursuant to 42 U.S.C. § 1988;

-15-
COMPLAINT

5. For costs of suit; and

6. For such other and further relief as the court may deem proper.

**ON THE SECOND CAUSE OF ACTION [42 U.S.C. § 1983 (excessive force)**

7. For general and special damages;

8. For compensatory damages for lost earnings, loss of future earnings, and loss of earning capacity;

9. For exemplary and punitive damages;

10. For attorney fees pursuant to 42 U.S.C. § 1988;

11. For costs of suit; and

12. For such other and further relief as the court may deem proper.

**ON THE THIRD CAUSE OF ACTION [42 U.S.C. § 1983 (Monell)**

13. For general and special damages;

14. For compensatory damages for lost earnings, loss of future earnings, and loss of earning capacity;

15. For attorney fees pursuant to 42 U.S.C. § 1988;

16. For costs of suit; and

17. For such other and further relief as the court may deem proper.

SKAPIK LAW GROUP

Dated: February 28, 2023          By: _____
                                       Mark J. Skapik
                                       Attorneys for Plaintiff
                                       JONATHAN LAMAR JACKSON

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

SKAPIK LAW GROUP

Dated: February 28, 2023                    By: _____
                                            Mark J. Skapik
                                            Attorneys for Plaintiff
                                            JONATHAN LAMAR JACKSON

COMPLAINT